OPINION
{¶ 1} Defendant-Appellant, Travis Essinger, appeals a judgment of the Hancock County Common Pleas Court finding him guilty of robbery and sentencing him to eight years in prison. Essinger asserts that his conviction is contrary to the manifest weight of the evidence; that there is insufficient evidence to sustain a conviction; that his trial counsel was ineffective; and that the trial court committed plain error. Finding that none of Essinger's claims have merit, we overrule his assignments of error and affirm the judgment of the court below.
{¶ 2} In December of 2002, Essinger was drinking beer with some friends at Dillon's Bar (Dillon's) located in Findlay, Ohio. At the time, Essinger was on community release from prison where he had been serving a sentence on a previous robbery conviction. Around 10:00 p.m. the victim, Steve Campton, walked into Dillon's. Campton was visibly intoxicated and engaged Essinger in a conversation concerning the purchase of crack cocaine. The bartender overheard this conversation and told them to either quit talking about drugs or leave. Essinger first argued with the bartender and then he returned to his table.
{¶ 3} Subsequently, Campton accused the bartender of being a drug dealer. The bartender told Campton to leave and escorted him out the back door and onto the back porch. While the bartender was walking back into the bar, he passed Essinger walking down the back hallway toward the same back door. Approximately ten to twenty minutes later, Essinger came back inside the bar and informed the bartender that Campton was passed out on the back porch. The bartender went outside and saw Campton lying on the back porch bleeding from the head. The bartender then called the police.
{¶ 4} The police arrived and found Campton unconscious. He had suffered severe head wounds and an ambulance took him to the hospital. A subsequent search of Campton revealed that he had no money, no identification, and no contraband on his person. During the investigation of the scene, police found clumps of down feathers and Campton's wallet approximately thirty feet from the back porch. They also found what they identified as traces of blood near the wall of the building beyond the back porch.
{¶ 5} After the ambulance took Campton to the hospital, the police questioned the bar patrons, including Essinger. Although what Essinger told police that night changed several times, the following is, in essence, the version of events he told the police. Campton approached Essinger outside the bar and asked him to buy some crack. When Essinger refused, Campton grabbed him. Essinger then pulled away, causing his jacket to rip and Campton to fall and hit his head. Officers matched the down feathers they found behind the bar to those coming out of the hole in Essinger's jacket.
{¶ 6} During the questioning of Essinger, several inconsistencies developed. Essinger claimed both that he was outside before Campton and that he followed Campton out. Essinger also claimed that they were on the porch the entire time, and he stated they were off the porch then back on the porch. Essinger also stated that he could not remember any part of the altercation. He also claimed that he had substantially less than $200.00 on his person, and then he produced $212.00 dollars from his pockets.
{¶ 7} Based upon Essinger's inconsistent statements, the statements of others in the bar, physical evidence found outside the bar, and physical evidence which was not consistent with Campton suffering a fall, the police placed Essinger under arrest. Subsequently, Essinger was indicted on one count of robbery in violation of R.C.2911.02(A)(2).
{¶ 8} At trial, Essinger testified as to yet another version of the events which occurred that night: Essinger followed Campton outside to engage in a drug deal with him. Essinger, Campton, and three other individuals began smoking marijuana and discussing the purchase of crack cocaine. Campton pulled out his wallet with only one dollar in it. This made Essinger mad, as he thought Campton would not have the money for the drug deal, so Essinger grabbed Campton's wallet and "wung" it towards the spot where it was found by the police. Subsequently, Campton produced $59.00 from his pockets, which he gave to Essinger for the purchase of crack cocaine. Campton insisted on going with Essinger to purchase the crack. When Essinger refused, Campton grabbed him and a struggle ensued which ended with Essinger's jacket being ripped and Campton slipping and hitting his head.
{¶ 9} After deliberation, the jury found Essinger guilty and he was sentenced to eight years in prison. It is from this judgment that Essinger appeals, presenting four assignments of error for our review.
 First Assignment of Error
Mr. Essinger's conviction is against the manifest weight of the evidence. (Trial Tr., Vol. III-IV, p. 349-603).
 Second Assignment of Error
The trial court erred in denying Mr. Essinger's motion for acquittal because there was insufficient evidence to prove that he was guilty of robbery as alleged in the indictment. Mr. Essinger's conviction thus violates due process. (Trial Tr., Vol. III-IV, p. 349-603).
{¶ 10} In his first and second assignments of error, Essinger asserts that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. Because, "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different,"[1] we will address each separately.
{¶ 11} We first address Essinger's claim that the evidence was insufficient to support the finding that he was guilty beyond a reasonable doubt. An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[2]
{¶ 12} Essinger was charged with committing robbery under R.C.2911.02(A)(2). The two essential elements of robbery the state had to prove were: (1) that there was a theft and (2) the theft was facilitated by the use of physical force.[3] Because Essinger only challenges the sufficiency of the evidence to prove that he intended to use force, we do not address the sufficiency of the evidence to prove he committed a theft.
{¶ 13} Admittedly, the evidence in this case was almost entirely circumstantial. There was even some evidence that supported Essinger's version of the events. However, when the evidence is considered in a light most favorable to the prosecution, it becomes clear the evidence was sufficient to support the finding that Essinger used force to facilitate a theft.
{¶ 14}Testimony established that Essinger and Campton were outside the bar at the same time. The testimony of the officers was that Campton's wounds did not appear to be those caused by a fall. Pictures of Campton's wounds were entered into evidence along with testimony showing Campton had suffered injuries to the back and front of his head. Pictures of the back porch were entered into evidence as well as pictures depicting blood near the wall of the bar past the back porch. This was not consistent with Essinger's claim that Campton had fallen on the porch. Essinger was found with Campton's money on him. When Essinger pulled the money out, it was crumpled up and located in several different pockets. Essinger had been giving conflicting versions of what happened that night to both the police and his friends. Campton testified that he would not have given his money or wallet up voluntarily.
{¶ 15} Viewing all of the above in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found that Essinger took Campton's money from him by using force. Therefore, we must overrule Essinger's second assignment of error.
{¶ 16} We next address Essinger's claim that the conviction was against the manifest weight of the evidence. When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[4] Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trail court's judgment.[5]
{¶ 17} Essinger seems to claim that because he took the stand and gave an alternate version of the events, his conviction is against the manifest weight of the evidence. However, the jury was free to disregard his version of the events. Essinger admitted on the stand that he had lied to not only the police officers on the scene, but also to a judge. His credibility was at issue during the entire trial, particularly since his defense was that he lied to the police to cover up the fact he was violating his probation terms, abusing marijuana, and attempting to purchase crack cocaine.
{¶ 18} After having reviewed the entire record and considered all of the conflicting evidence, we can not say that the jury clearly lost its way in finding Essinger guilty of robbery. Accordingly, Essinger's first and second assignments of error are overruled.
 Third Assignment of Error
Trial counsel was ineffective for failing to object to prosecutorial misconduct that occurred during Mr. Essinger's cross-examination as well as during closing arguments, for failing to object to inadmissible evidence, for failing to request an instruction on impeachment by prior conviction and for failing to properly explain to Mr. Essinger his right to present a defense without taking the witness stand to testify in his own defense. Counsel's ineffectiveness substantially prejudiced Mr. Essinger's defense, thus denying him the effective assistance of counsel and due process of law. (Trial Tr., Vol. III-IV, p. 370-675).
{¶ 19} In his third assignment of error Essinger contends his defense counsel's performance at trial constituted ineffective assistance of counsel. Specifically, Essinger cites defense counsel's repeated failures to object, failure to request a limiting instruction, and failure to properly explain the ramifications of testifying.
{¶ 20} The Supreme Court has developed a two prong test for evaluating ineffective assistance of counsel claims.[6] Under the first prong, counsel's performance must be shown to have been deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment."[7] The second prong requires a showing that the deficient performance caused the defendant prejudice.[8] Prejudice will be found where there is a reasonable probability that, but for counsel's errors, the results of the trial would have been different.[9] Essinger has the burden of proving both prongs of this test.[10] Thus, Essinger must show that his counsel erred and that absent such error, the outcome of the trial would have been different. Moreover, Essinger must overcome the presumption that, "the challenged action `might be considered sound trial strategy.'"[11]
{¶ 21} The bulk of Essinger's claims of ineffective assistance of counsel are based upon defense counsel's failure to object to certain questions and answers that occurred during the state's direct and cross examinations. Specifically, Essinger cites to eleven such instances.
{¶ 22} The first three instances Essinger refers to occurred during direct examination. He claims each involves hearsay evidence which was elicited without a proper objection. Two of the instances occurred when police officers testified as to something Essinger had told them. Clearly these statements do not fall under the definition of hearsay because they are statements of a party opponent offered by the opposing party.[12] Because they were not hearsay, it was not error for defense counsel to refrain from objecting.
{¶ 23} The third instance occurred when Officer Douglas testified that Essinger's friend, Jeff Highfill, had told Officer Douglas he had seen Essinger and Campton in a struggle off the porch. This statement might be deemed to be hearsay, because it was an out of court statement being offered to prove the truth of the matter;[13] however, Highfill had previously been a witness and testified to this himself under direct examination. Therefore, the statement might not be deemed hearsay, as a statement merely explaining conduct of the investigation. Furthermore, defense counsel had already been overruled on a premature objection to possible hearsay evidence a few moments before. It could have been defense counsel's trial strategy to not object to this testimony because it was merely repetitive, and he did not want to object in front of the jury needlessly. Essinger has failed to overcome the presumption that the challenged action was based on trial strategy, and we find no error in defense counsel's failure to object.
{¶ 24} Next, Essinger maintains that his lawyer should have objected to certain parts of the bartender's testimony. The bartender testified that he thought Essinger had beaten up or taken advantage of Campton. However, a closer reading of the bartender's testimony reveals he testified that he thought the altercation was part of a drug deal. This is precisely the defense Essinger was attempting to put before the jury. It may have been defense counsel's strategy not to object to the bartender's testimony because it bolstered his defense. Because it appears to have been trial strategy not to object, we fail to find error in this instance.
{¶ 25} Essinger's next complaint concerns the direct examination of Highfill by the prosecutor, during which Highfill was asked some arguably leading questions. Essinger contends that defense counsel erred by not objecting to these questions. However, looking at the entire testimony of Highfill, it is reasonable to presume again that defense counsel was exercising trial strategy by not objecting. Highfill's testimony was not damaging to Essinger, in fact it bolstered his defense. Highfill testified that Essinger was not the aggressor, and never threw a punch. There was no reason for counsel to object to these leading questions, and thus no error.
{¶ 26} Further, Essinger claims it was improper for the prosecutor to impeach Highfill on redirect. Evidence Rule 607 requires, "a showing of surprise and affirmative damage" before a witness can properly be impeached by the party calling him. During his testimony, Highfill stated that he had witnessed the altercation between Essinger and Campton and heard Campton state he wanted to go with Essinger. This version of events paralleled Essinger's defense, and Highfill had never related it to anyone before that day. In this case it is clear the prosecution was both surprised and damaged by Highfill's testimony. Therefore, it was proper for the prosecution to attempt to impeach Highfill, and it would have been futile for counsel to object.
{¶ 27} Essinger also claims defense counsel erred by failing to object to the prosecution eliciting from Campton, "a medical opinion" concerning his inability to remember the events of that night. However, the prosecutor in this case was merely responding to a line of questioning put forth by Essinger's counsel on cross examination. On cross, defense counsel asked Campton if his memory was impaired that night because of the amount he had to drink. It was proper for the prosecutor to clarify this testimony and ask if it was the alcohol or the fall which caused his memory loss. Because he had opened the door, counsel could not then object, and a failure to do so was not error.
{¶ 28} Essinger's next claim is that it was error for his counsel not to object to testimony from the bartender and Officer Douglas implicating Essinger had previously been in trouble with the law. Reading the indicated parts of the transcript, any references to Essinger's past encounters with the law were indirect at best. Moreover, it would have been impossible for defense counsel to have objected to the bartender's statements as they were elicited by him during his cross-examination. We can not find an error in defense counsel's failure to object to his own questions.
{¶ 29} Regarding Officer Douglas' testimony, he merely referred to his relationship with one of Essinger's friends as, "not the best," and he did so in the context of explaining why he had not been able to interview one of the bar patrons that night. Never did Officer Douglas implicate Essinger or his friends in any kind of specific criminal behavior or wrongdoing. Accordingly, these comments would not have been proper grounds for an objection by defense counsel. Additionally, it may have been trial strategy not to accentuate any previous relationship between Essinger and the police.
{¶ 30} Essinger raises another hearsay claim based upon the testimony of Officer Douglas. Officer Douglas testified that he had received the weather conditions from the national weather service by contacting dispatch. Essinger is correct in his contention that this is hearsay. The out of court statement of dispatch telling Douglas the wind direction was entered to prove the direction the wind was actually blowing that night. However, Officer Douglas also testified to his observations that night. He testified that he did not observe any wind behind Dillon's because it was being blocked by the building. In fact, Essinger himself testified that there was no wind behind the bar on the night in question. The importance of the wind was to show that the feathers from Essinger's jacket had not blown to the spot near Campton's wallet, but that Essinger had in fact been involved in the altercation there. Because Officer Douglas testified to a personal observation of the wind that night, the hearsay involving the national weather service report was harmless. It could have been defense counsel's strategy to not object to such a trivial matter that even his own client was not contesting. Thus, we do not find error in this failure to object.
{¶ 31} The next error Essinger puts forward is defense counsel's failure to object to the prosecutor's line of questioning on cross examination regarding Essinger's prior conviction for robbery. The prosecutor went into the details of Essinger's offense and subsequent judicial release to show that Essinger had lied to both the police and the judge in the prior case. This was proper cross-examination material as he was attacking the truthfulness of the witness, and an objection by defense counsel would not have been sustained.
{¶ 32} Furthermore, on direct examination, Essinger insinuated that he had pled guilty to the previous robbery charge because he was guilty and had not done so here because he was not guilty. Therefore, it was proper for the prosecution to question Essinger about his previous plea bargain and conviction.
{¶ 33} One of Essinger's more intriguing propositions is that it was error for defense counsel not to request a curative instruction which would have limited the jury's consideration of Essinger's prior conviction. It is intriguing because Essinger claims that no curative instruction was given to the jury concerning the proper use of prior convictions, while the state continues to insist such an instruction was requested and given. This court has reviewed the entire record and can find no such instruction nor request. Indeed, the state has failed to point this court to any specific part of the record revealing such an instruction.
{¶ 34} "[T]he decision not to request a limiting instruction is sometimes a tactical one."[14] Indeed numerous other districts have rejected ineffective assistance of counsel claims based on an attorney's failure to request a limiting instruction for evidence of the defendant's prior convictions.[15] "Defense counsel may have declined to request a limiting instruction regarding the appellant's prior convictions * * * out of fear that, if such an instruction was given, the prior convictions would be once again called to the jury's attention."[16] We are inclined to follow the established case law, and hold that it is within sound trial strategy for an attorney to fail to request a cautionary instruction regarding an appellant's prior convictions.
{¶ 35} Essinger's next set of ineffective assistance of counsel arguments involve the state's closing arguments. It should be noted that in closing arguments the prosecution is to be given wide latitude.[17]
However, the prosecutor should avoid going beyond the evidence that is before the jury in order to obtain a conviction.[18]
{¶ 36} During his closing argument, the prosecutor pointed out the fact that the crime Essinger was admitting to, attempting to deal crack, was a lesser crime than robbery. This information was before the jury as Essinger himself had testified that he knew robbery was a more serious crime. Therefore it was proper for the prosecutor to comment on the inference that Essinger was only admitting one crime to avoid the prosecution of another crime with a more serious penalty.
{¶ 37} Essinger also complains of the prosecution's mention of his guilty plea in a prior hearing. However, Essinger insinuated on the stand that he had pled guilty in the prior case because he was guilty and had taken the present case to trial because he was not guilty. Therefore it was proper for the prosecutor to comment on such.
{¶ 38} Additionally, Essinger contends that it was error for the prosecutor to comment on Essinger's failure to produce the three eyewitnesses he claimed had heard him and Campton discussing a drug deal. In support of this proposition, Essinger cites to Griffin v. California.[19] The logic counsel relies on in applying Griffin to this case is faulty at best. Indeed the Supreme Court has banned comments on the defendant's decision to exercise his Fifth Amendment right not to testify. However, unless the defendant reasonably accounts for their absence, it is not improper for a prosecutor to comment on the defendant's failure to provide witnesses expected to testify on his behalf.[20] "[I]t is not improper for counsel upon the other side to infer that his testimony would be unfavorable to the defendant *** [t]his is the common sense of common experience in every day life, and is not forbidden by any law as the proper subject of comment in a court of justice."[21]
{¶ 39} Essinger failed to produce the identity of these witnesses until he was actually on the witness stand at trial. Before trial he refused to give even his own attorney their identity or an explanation as to why they were not available. They were the only people who could have corroborated his story that he was discussing a drug deal with Campton. Therefore, it was proper subject for the prosecutor to comment on, and an objection by defense counsel would have been futile.
{¶ 40} Essinger also discusses the prosecutions comments during closing arguments regarding the truthfulness of the bartender. He is correct in asserting that it is improper for the prosecutor to make statements in closing arguments regarding his personal belief as to the credibility of a witness.[22] However, as other courts have held, the failure to object to such a statement by the prosecutor is not error when the court has clearly instructed the jury that closing arguments are not evidence.[23]
{¶ 41} Lastly, Essinger claims defense counsel failed to provide him with adequate advice concerning the decision to testify. It is clear from the record that defense counsel adequately informed Essinger of the risks and benefits of testifying. Essinger was intent on putting his version of the events before the jury. The only way he could do this was to testify. Both Essinger and his lawyer stated, on the record, that defense counsel had gone over the various pros and cons of testifying. The court even made a specific inquiry into this. "The advice provided by a criminal defense lawyer to his or her client regarding the decision to testify is `a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance.'"[24] The actions of defense counsel in advising Essinger to testify are far from the "egregious error" he claims in his appellate brief.
{¶ 42} Having reviewed the entire record, all of Essinger's claims, and the applicable law, we can not say that defense counsel committed errors which were so prejudicial as to affect the outcome of the trial. Accordingly, Essinger's third assignment of error is overruled.
 Fourth Assignment of Error
The trial court's failure to correct prosecutorial misconduct, strike inadmissible evidence, adequately determine whether Mr. Essinger understood his right to present a defense without taking the witness stand and properly instruct the jury was plain error that substantially prejudiced Mr. Essinger's defense and denied him due process of law. (Trial Tr., Vol. III-IV, p. 370-675).
{¶ 43} In his final assignment of error, Essinger maintains the trial court committed plain error when it failed to correct certain "mistakes" which arose during trial.
{¶ 44} The Ohio Supreme Court has set forth a tripartite test to determine whether plain error is present: 1) there must be an error; 2) the error must be plain, i.e., the error must be an obvious defect; and 3) the error must have infringed upon substantial rights by affecting the outcome of the trial.[25] It is important to remember that the constitution does not guarantee a perfect trial, only a fair one.[26]
{¶ 45} The first two instances of plain error Essinger raises are the failure of the court to rectify prosecutorial misconduct and strike inadmissible evidence entered by the state. Both of these arguments parallel those made in Essinger's third assignment of error. There we said that the actions complained of by Essinger either were not errors at all, or were such that they would not have affected the outcome of the trail. Thus, we do not address these issues here further except to say that, under the test established by the Supreme Court, they do not constitute plain error.
{¶ 46} The third plain error Essinger complains of is the trial court's failure to ensure Essinger understood his right not to testify. However, this is clearly not supported by the record. The court questioned Essinger about his testifying not only at the very beginning of the trial, but again immediately before he testified. The court made sure to inform Essinger of his right not to testify and the risks inherent in testifying. The court also inquired into the reasoning and advice of defense counsel regarding Essinger's decision to testify. The record clearly shows that the court made sure Essinger knew his rights and the risks he was taking.
{¶ 47} The last plain error Essinger discusses is the lack of a limiting instruction from the court regarding the jury's use of Essinger's past criminal convictions. The failure of a court to give a limiting instruction is not plain error, because, as discussed above, the defense counsel's decision to request a limiting instruction can be a tactical one.[27] Courts should not interfere with the tactical decisions of trial counsel by stepping in and sua sponte giving a limiting instruction.[28]
Therefore, we find that Essinger's final plain error argument is without merit, and we overrule his fourth assignment of error.
{¶ 48} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
"SHAW and CUPP, J.J., concur."
[1] State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus.
[2] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in State v. Smith (1997), 80 Ohio St.3d 89.
[3] R.C. 2911.02(A)(2).
[4] Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
[5] Id.
[6] Strickland v. Washington (1984), 466 U.S. 668.
[7] Id at 687.
[8] Id.
[9] Id. at 694, see, also, State v. Bradley (1989), 42 Ohio St.3d 136,142-143.
[10] State v. Lott (1990), 51 Ohio St.3d 160, 175.
[11] Strickland, 466 U.S. at 689, quoting Michel v. Louisiana (1955),350 U.S. 91, 101.
[12] Evid.R. 801(D)(2)(a).
[13] Evid.R. 801(c).
[14] State v. Schaim (1992), 65 Ohio St.3d 51, at footnote nine.
[15] State v. Hester, 10th Dist. No. 02AP-401, 2002-Ohio-6966, at 15-16; State v. Pitts, 9th Dist. No. 20976, 2002-Ohio-6291, at 84-85; State v. Smith (Aug. 20, 1999), 5th Dist. No. 98-CA-6, unreported; State v. Thompkins (Nov. 22, 1995), 1st Dist. No. C-940513, unreported.
[16] Pitts, at 85, quoting, Smith, supra.
[17] State v. Treesh (2001), 90 Ohio St.3d 460, 466.
[18] State v. Smith (1984), 14 Ohio St.3d 13, 14.
[19] (1965), 381 U.S. 957.
[20] State v. Brooks (June 4, 1987), 2nd Dist. No. 9190, unreported, see, also, State v. Champion (1924), 109 Ohio St. 281, 289-290.
[21] Champion, 109 Ohio St. at 289-290.
[22] State v. Smith (1984), 14 Ohio St.3d 13, 14, citing, State v. Thayer (1931), 124 Ohio St. 1; DR 7-106 (C) (4).
[23] State v. Bortner, 9th Dist. No. 02CA008189, 2003-Ohio-3508, at 36-39; State v. Brown, 12th Dist. No. CA2002-03-026, 2002-Ohio-5455, at 22.
[24] State v. Winchester, 8th Dist. No. 79739, 2002-Ohio-2130, at 12, quoting, Hutchins v. Garrison (1983), 724 F.2d 1425, 1436, cert. denied, 464 U.S. 1065, (1984); see, also, Jones v. Murray (1991),947 F.2d 1106, 1116, fn. 6. 
[25] State v. Barnes (2002), 94 Ohio St.3d 21, 27; see, also, State v. Williams, 3rd Dist. No. 1-01-63, 2002-Ohio-3623, at 41.
[26] United States v. Hasting (1983), 461 U.S. 499, 508-509; State v. Lott (1990), 51 Ohio St.3d 160, 166.
[27] Schaim, 65 Ohio St.3d at footnote nine; State v. Fridley, 5th Dist. No. 02CA0952, 2003-Ohio-3744, at 16-21.
[28] Fridley, at 16-21.