[Cite as *State v. Haven*, 2019-Ohio-973.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 18-COA-025 |
| | : | |
| PAULA M. HAVEN | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Ashland Municipal
Court, Case No. 17CRB01204


JUDGMENT:      AFFIRMED


DATE OF JUDGMENT ENTRY:      March 18, 2019


APPEARANCES:

For Plaintiff-Appellee:                          For Defendant-Appellant:

ANDREW N. BUSH                              JOSEPH P. KEARNS, JR.
Assistant Director of Law                   P.O. Box 345
City of Ashland                                 153 W. Main St.
1213 E. Main St.                               Ashland, OH 44805
Ashland, OH 44805

*Delaney, J.*

{¶1}   Defendant-Appellant Paula M. Haven appeals the May 18, 2018 sentencing entry of the Ashland Municipal Court. Plaintiff-Appellee is the State of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   On August 25, 2017, Defendant-Appellant Paula M. Haven parked her vehicle outside Walmart, located in Ashland, Ohio. She, with her two children, entered the Walmart from the Tire Lube Express entrance. She took a shopping cart, placed her purse in the cart, and went to the men's apparel department. Josh Smith is the Loss Prevention Associate for the Ashland Walmart. He observed Haven in the men's apparel department. He was dressed in plain clothes and stood 15 to 20 feet away from Haven in such away she could not see him. Smith observed Haven pick out items of men's clothing, remove the hangers from the items, and roll the items up. She placed the rolled-up clothes in the shopping cart next to her purse. Smith could not describe the clothing Haven rolled up and placed in the cart. He estimated she rolled up more than two but less than six items of clothing.

{¶3}   Haven left the men's clothing department and Smith followed her. Haven went to the toy department, where her children were located, and then she went to the shoe department. While in the shoe department, Smith observed Haven put the rolled-up clothes from the shopping cart into her purse. Smith was concerned that Haven was not going to pay for the items she placed in her purse, so he continued to follow her.

{¶4}   Haven went to different departments within the Walmart and placed merchandise in her shopping cart. Haven went back to the toy department and gathered her children. She went to the pharmacy department. Smith observed Haven ask the

pharmacist for boxes of Sudafed. Haven paid for the Sudafed and the merchandise in her shopping cart, but Smith did not see Haven remove the rolled-up clothing items she placed in her purse and pay for them.

{¶5} After she made her purchase, Haven went to the restroom. Smith sent a female Walmart employee into the restroom and the employee did not observe any merchandise in the restroom.

{¶6} Haven left the store through the automotive department exit. When Haven left the store, Smith stopped her just outside the exit door in the parking lot, stating that he needed to speak with her regarding the merchandise in her purse. Haven responded, "no" and she proceeded to her car. Smith observed Haven walk quickly to her car. She put the children in the car and accidently left her car keys in the car door after she got into her car. She retrieved the keys and drove away.

{¶7} Smith reviewed the security camera recordings within the Walmart. The security camera recordings did not capture Haven concealing merchandise in her purse. Smith observed Haven place the merchandise in her purse while she was in the shoe department. There was no security camera in the shoe department.

{¶8} Smith contacted the City of Ashland Police Department and Officer Cody Hying responded. He took the report from Smith about Haven's alleged theft and forwarded it to the City of Ashland Law Department for review.

{¶9} Haven was charged with one count of Petty Theft, a first-degree misdemeanor in violation of R.C 2913.02(A)(1). Haven entered a plea of not guilty and the matter proceeded to a jury trial on May 17, 2018.

{¶10} At trial, Haven testified on her own behalf. Haven denied having placed any unpaid merchandise in her purse or that she left the store with unpaid merchandise on August 25, 2017. She testified that Josh Smith had a vendetta against her since he lost the case against her in 2015. In 2015, Smith stopped Haven in the Ashland Walmart because he observed Haven put merchandise in a reusable shopping bag and attempt to leave the store. Haven stated that she was not trying to leave the store, but simply getting a shopping cart from the store entrance. Haven was charged with petty theft and possession of criminal tools. The matter went to trial and Haven was found not guilty of both charges. Haven testified that Josh Smith has stopped her while she shopped in the Walmart five or six times, asking to look in her purse. She always complied with his requests because her children were not with her at those times. On August 25, 2017, Haven testified that she did not comply with Smith's request to look in her purse because her children were with her. Smith testified that he has only stopped Haven twice, once in 2015 and in 2017.

{¶11} The jury found Haven guilty of petty theft. The trial court sentenced Haven to 30 days in jail, with 20 days suspended, and one year of probation. Haven was fined $250.00 and ordered to pay court costs. (Sentencing Entry, May 18, 2018).

{¶12} It is from this judgment Haven now appeals.

## ASSIGNMENTS OF ERROR

{¶13} Haven raises two Assignments of Error:

{¶14} "I. THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶15} "II. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL."

## ANALYSIS

### I. Manifest Weight of the Evidence

{¶16} Haven argues in her first Assignment of Error that her conviction for petty theft was against the manifest weight of the evidence. We disagree.

{¶17} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶18} Haven was convicted of petty theft, less than $1,000, in violation of R.C. 2913.02(A)(1). The statute reads in pertinent part:

(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

(1) Without the consent of the owner or person authorized to give consent;

{¶19} Haven argues the jury lost its way when it convicted her of petty theft. She points to the lack of evidence that she purposely deprived Walmart by exerting control over their property without paying. First, Smith was not able to identify what items Haven allegedly took from the men's apparel department. Second, there was no security footage showing her place anything in her purse. Finally, the alleged stolen merchandise was never recovered.

{¶20} The lack of physical or video evidence required the jurors to largely determine Haven's innocence or guilt based on the credibility of the witnesses. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." *State v. Brindley*, 10th Dist. Franklin No. 01AP-926, 2002-Ohio-2425, 2002 WL 1013033, ¶ 16. We defer to the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraph one of the syllabus. When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." *State v. Pizzulo*, 11th Dist. Trumbull No. 2009-T-0105, 2010-Ohio-2048, 2010 WL 1839440, ¶ 11. Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. *Id*.

{¶21} Smith testified he observed Haven roll up clothing items from the men's apparel department, place the clothing in her shopping cart next to her purse, and then

place the items in her purse while she was in the shoe department. Haven checked out in the pharmacy department and did not pay for the items she placed in her purse. When confronted by Smith, Haven would not let Smith look in her purse when Haven said at other times, she let Smith look in her purse when asked. Haven went to her car and when she got into her car, she left her car keys in the car door. She had to retrieve her car keys to start her car. The jury could have determined Haven's actions after she was accused of theft pointed to her guilt.

{¶22} The determination of witness credibility is left to the trier of fact. The jury in this case found the testimony of Josh Smith more credible than Haven's testimony. We find no error for the jury to determine the testimony of Smith was more credible than Haven to find Haven guilty of petty theft.

{¶23} Haven's first Assignment of Error is overruled.

## II. Ineffective Assistance of Counsel

{¶24} Haven contends in her second Assignment of Error that she received ineffective assistance of trial counsel. We disagree.

{¶25} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See*, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955). "There are countless ways to provide effective assistance

in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶26} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

{¶27} Haven first argues defense counsel was ineffective for putting her on the witness stand. She argues her testimony allowed the State to cross-examine her concerning prior bad acts. The advice provided by a criminal defense lawyer to his or her client regarding the decision to testify is "a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance." *State v. Nesbitt*, 5th Dist. Stark No. 2017CA00234, 2018-Ohio-4222, ¶ 48 quoting *State v. Winchester*, 8th Dist. Cuyahoga No. 79739, 2002-Ohio-2130, ¶ 12, appeal not allowed, 96 Ohio St.3d 1512, 2002-Ohio-4950, 775 N.E.2d 855, citing *Hutchins v. Garrison*, 724 F.2d 1425, 1436 (C.A.4 1983), cert. denied, 464 U.S. 1065, 104 S.Ct. 750, 79 L.Ed.2d 207 (1984) and *Jones v. Murray*, 947 F.2d 1106, 1116 (C.A.4, 1991), fn. 6; see also, *State v. Essinger*, 3rd Dist. Hancock No. 5-03-15, 2003-Ohio-6000, ¶ 41, appeal not allowed, 102 Ohio St.3d 1409, 2004-Ohio-1763, 806 N.E.2d 561. Nonetheless, a claim for ineffective assistance of counsel may be successful if the record demonstrates the defendant's decision whether or not to testify was the result of coercion. *Id., citing Lema v. United States*, 987 F.2d 48, 52–53 (C.A.1, 1993). Nothing in the record suggests Haven's decision

to testify was the result of coercion. A defendant in a criminal case has the due process right to take the witness stand and to testify in his or her own defense. *Rock v. Arkansas*, 483 U.S. 44, 51, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). The record does not demonstrate Haven did not choose to testify of her own free will, and she therefore cannot challenge his decision to testify as ineffective assistance of counsel.

{¶28} Haven also argues her trial counsel's decision to raise at trial Haven's 2015 acquittal for petty theft and possession of criminal tools was ineffective assistance of counsel. During the cross-examination of Josh Smith, Haven's counsel asked if he had prior interactions with Haven. (T. 59). The State objected, arguing Smith's prior interactions with Haven were not relevant. (T. 61). Haven's counsel argued that because there was no video evidence of the alleged theft and no merchandise was recovered, Smith was the State's main witness. Haven's counsel was attempting to show Smith's bias against Haven. (T. 62). The trial court stated it was concerned that counsel's line of questioning would open the door to Haven's 2015 petty theft case, which could be prejudicial to Haven. (T. 65-66). Trial counsel argued the fact pattern from the 2015 case and the present case were different and Haven could testify to those issues. (T. 66). The trial court allowed the line of questioning as to Smith's prior encounters with Haven and stated that it opened the door for the State to ask about the 2015 case. (T. 68).

{¶29} Haven contends counsel's strategy of demonstrating Smith's bias towards Haven opened the door to testimony regarding Haven's prior bad acts, prejudicing Haven in the eyes of the jury. Haven further argues the trial tactic was unnecessary because there was no physical evidence to support Smith's testimony that Haven shoplifted.

{¶30} Upon a review of the trial transcript, we find that Haven failed to meet her burden to show her trial counsel acted incompetently. Josh Smith was the State's main witness. There was no video evidence of Haven's shoplifting to corroborate Smith's testimony. Smith could not describe the clothing Haven put in her purse. The stolen merchandise was never recovered. The transcript shows that Haven's counsel deftly cross-examined Smith to demonstrate the gaps in the video surveillance and Smith's lack of detailed knowledge as to the items stolen by Haven. To support Smith's lack of knowledge and evidence to support his allegations, Haven's counsel attempted to demonstrate that Smith had a bias against Haven. Smith did not testify that Haven acted surreptitiously when she entered the Walmart on August 25, 2017, yet Smith followed Haven to the men's apparel department and watched her as she shopped. Haven's counsel attempted to explain Smith's bias against Haven as arising out of the 2015 petty theft case for which Haven was acquitted. Both Smith and Haven explained the facts of that case, which were different from the circumstances of the present case. We cannot say that Haven's trial counsel acted outside the wide range of professionally competent assistance by attempting to show the bias of the State's main witness, nor can we say that but for the alleged incompetence, the result of the trial would have been different.

{¶31} Haven's second Assignment of Error is overruled.

**CONCLUSION**

{¶32} The judgment of the Ashland Municipal Court is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Baldwin, J., concur.