DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant Joann Walker appeals the decision of the Medina County Court of Common Pleas finding her guilty of child endangering and sentencing her to a term of imprisonment of four years. We affirm.
 {¶ 2} On March 17, 2005, Defendant was indicted for child endangering in violation of R.C. 2919.22(A). Defendant pled not guilty on April 4, 2005. On November 10, 2005, after a jury trial that lasted several days, Defendant was found guilty of endangering a child, namely her daughter. The jury made the additional finding that Defendant's actions resulted in serious physical harm to the child. On December 23, 2005, the trial court sentenced Defendant to a four year term of imprisonment.
 I. Facts {¶ 3} Defendant is a single mother of one child, CW, who was eight years old at the time of Defendant's trial. Defendant lived in a trailer park in Brunswick, where she had lived since CW was one year old. In 2003, Defendant met and began dating Robert Troutman, another resident of the trailer park. There was testimony at the trial that Troutman began to remodel a room in his trailer for CW, and that Defendant and CW would sometimes spend the night at Troutman's trailer.
 {¶ 4} During the course of this relationship, Defendant was aware of two investigations into allegations that Troutman was molesting young girls, including CW. At the urging of Sgt. Steve Klopfenstein of the Brunswick Police Department, who thought that it was not safe for CW to be in contact with Troutman, Defendant did stop seeing Troutman for the duration of the second investigation, which involved allegations that Troutman had molested CW. Believing that Troutman had reformed his life after the first investigation, Defendant resumed the relationship when Medina County Job and Family Services informed Troutman that the charges prompting the second investigation were not able to be substantiated. Defendant insisted that she had asked Sgt. Klopfenstein whether she could see Troutman again, and her impression was that Klopfenstein said it was safe.
 {¶ 5} Defendant and Troutman attributed the molestation charges to jealousy on the part of other trailer park residents who did not like the relationship between Troutman and Defendant, and Defendant dismissed them as "hearsay." However, it was widely known in the trailer park that Troutman had been investigated on molestation charges. Moreover, Troutman had developed the nickname "Chester the Molester" among the residents of the trailer park, an appellation of which Defendant testified she was quite aware.
 {¶ 6} Ultimately, CW told Defendant's niece Sabrina that Troutman had been "touching" her, and that sometimes he "touched" her while he "touched" himself. Sabrina was able to ascertain that Troutman had digitally penetrated CW, and that he bribed her by offering to give her money and gifts for her silence. Sabrina urged Defendant to take CW to the hospital. This conversation took place on the Friday after Thanksgiving. Defendant waited until Monday evening to contact Sgt. Klopfenstein and tell him what CW had revealed. Shortly thereafter, CW was removed from Defendant's custody and put into foster care and Defendant was arrested on the charge of child endangering. Troutman was arrested and pled no contest to the charge of rape.
 {¶ 7} While CW was in foster care and prior to the trial, she was treated by Dr. Suzanne LeSure, a licensed psychologist, who diagnosed CW with post traumatic stress disorder (PTSD). In order to make this diagnosis, Dr. LeSure asked CW to describe her home life. One method of helping CW to do that was to have her make drawings of her life at home. Dr. LeSure examined the drawings and questioned CW in order to assess CW's condition. She was able to determine that CW had, on at least one occasion, slept in the same bed with Defendant and Troutman, and had seen her mother perform oral sex on Troutman who, at the same time, had digitally penetrated CW. However, Dr. LeSure was also able to determine that this was not the only time CW had been molested by Troutman. In fact, CW insisted to Dr. LeSure that it had happened many times, and that her mother was aware of it because she had been home when it had happened.
 II. Analysis {¶ 8} Defendant timely appeals her conviction and sentence and raises three assignments of error, which we will address individually.
 FIRST ASSIGNMENT OF ERROR
"There was insufficient evidence to support the jury's verdict, and [Defendant's] endangering children conviction was against the manifest weight of the evidence."
 {¶ 9} Defendant argues that there was insufficient evidence to support the jury's guilty verdict, that the verdict was against the manifest weight of the evidence, and that the jury's additional finding of substantial physical harm to CW was unsupported by the evidence.
 {¶ 10} As a preliminary matter, we observe that sufficiency of the evidence and weight of the evidence are legally distinct issues. State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541. Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.State v. Wolfe (1988), 51 Ohio App.3d 215, 216, 555 N.E.2d 689. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." Thompkins, at 386.
 {¶ 11} "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citingThompkins, at 390 (Cook, J., concurring). When a defendant asserts his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340, 515 N.E.2d 1009.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 12} Sufficiency of the evidence is required to take a case to the jury; therefore, a finding that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2. "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Id.
 {¶ 13} Appellant was convicted of child endangering in violation of RC 2919.22(A), which reads, in pertinent part:
"(A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. * * *"
The jury made a further finding under RC 2919.22(E)(2)(c):
"(2) If the offender violates division (A) or (B)(1) of this section, endangering children is one of the following:
* * *
"(c) If the violation is a violation of division (A) of this section and results in serious physical harm to the child involved, a felony of the third degree."
RC 2901.01(A)(5) defines "serious physical harm" in pertinent part as follows:
"(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment[.]"
 {¶ 14} The Supreme Court has held that the proper mens rea for the crime of child endangering is recklessness. State v.Adams (1980), 62 Ohio St.2d 151, paragraph one of syllabus,404 N.E.2d 144. RC 2901.22(C) defines recklessness as follows:
"A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
 {¶ 15} During the course of the trial, the jury heard evidence that Defendant was aware of multiple investigations into Troutman's relationships with at least two young girls, and that he had been incarcerated at one point for similar behavior. Several of the residents of Defendant's trailer park testified to the fact that Troutman had the nickname of "Chester the Molester" during the period when he was molesting CW. Defendant herself testified that she was aware of Troutman's reputation, and that she chose to disregard it. Despite Defendant's knowledge of Troutman's history and reputation, she permitted Troutman to babysit CW, to bathe CW and even to have CW spend the night at his trailer.
 {¶ 16} The jury also heard Dr. LeSure, relate the explanations CW had given for the drawings she had made, which the State admitted as evidence. One drawing depicted Troutman with a mass of scribbles over top of him (which CW told Dr. LeSure was her mother under the covers on top of Troutman) while Troutman was touching CW, who yelled "Help!" through a speech balloon, followed by nine exclamation points. Another drawing depicted a similar scene, this time with Troutman's hand clearly on CW's abdomen, while CW's speech balloon contained the word "Stop." Dr. LeSure determined from CW's explanations of the pictures that CW was depicting her mother performing oral sex on Troutman. Dr. LeSure was also able to testify that CW told her that Troutman's "touching" had happened on more than one occasion.
 {¶ 17} Dr. LeSure then testified that she had diagnosed CW with PTSD resulting from sexual abuse. The defense did not object to this diagnosis, or to Dr. LeSure's conclusion that the symptoms would recur later in CW's life. The defense also did not attempt to present contrary expert evidence.
 {¶ 18} Given this testimony, there was sufficient evidence for the jury to determine that Defendant had exposed her daughter to serious physical harm as defined by RC 2901.01(A)(5)(i) by allowing Troutman to have access to her.
 {¶ 19} The other question before the jury was whether Defendant had acted recklessly in continuing a relationship with Troutman. They were clearly justified in determining that her conduct in permitting Troutman to come in contact with CW amounted to a "heedless indifference to the consequences" and a "perverse disregard" for a known risk. The defense attempted to argue that Troutman did not present a "known" risk because Defendant was legitimately under the impression that Troutman had not actually molested CW and that the second investigation arose because the neighbors disliked Troutman and Defendant. However, the jury heard ample evidence to the contrary, from Dr. LeSure and Defendant herself, among others. It was reasonable for them to conclude that Defendant's knowledge was sufficient to alert her to the potential for a problem, and that her failure to appreciate the risk amounted to recklessness.
 {¶ 20} Although Defendant has argued that the jury's verdict is in conflict with testimony that she presented that she was unaware of Troutman's conduct, this court has found that "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." State v. Royston
(Dec. 15, 1999), 9th Dist. No. 19182, at *5, quoting State v.Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at *2. We find that the jury did not lose its way or create a manifest miscarriage of justice in determining that Defendant had recklessly exposed her child to serious psychological harm by allowing Troutman to be in contact with her. The verdict was not against the manifest weight of the evidence, and therefore the evidence was sufficient to support the verdict. See Roberts, at *2. Defendant's first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR
"The trial court abused its discretion and erred to the prejudice of [Defendant], where the court allowed hearsay testimony by a social worker into evidence concerning alleged statements by [Defendant's] minor daughter."
 {¶ 21} Defendant argues that the trial court erred in permitting a social worker to testify regarding CW's statements, which Defendant contends constituted inadmissible hearsay.
 {¶ 22} Defendant claims that three statements made on the stand by the social worker, Melissa Canella, were inadmissible hearsay: first, that CW told Canella that Defendant was present in the room when Troutman molested her; second, that CW told Canella that she had begged Defendant not to leave her alone with Troutman at his trailer; third, that CW told Canella that she witnessed her mother performing oral sex on Troutman.
 {¶ 23} The decision to admit evidence is within the sound discretion of the trial court, and is reviewed for abuse of discretion. State v. Ahmed, 103 Ohio St.3d 27, 2004-Ohio-4190, at ¶ 79. An abuse of discretion is more than an error of law or judgment, but rather, it is a finding that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Under this standard of review, an appellate court may not merely substitute its judgment for that of the trial court. Pons v.Ohio State Med. Bd., 66 Ohio St.3d 619, 621, 614 N.E.2d 748.
 {¶ 24} Hearsay is defined in Evid.R. 801 as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Under Evid.R. 802, hearsay is not admissible unless it falls within an exception provided by the rules of evidence. The improper admission of hearsay statements may create a violation of a defendant's Sixth Amendment right to confront the witnesses against him, in that the original declarant of the offered statement is not subject to cross-examination by the defendant. See State v. Madrigal (2000), 87 Ohio St.3d 378,384-85, 721 N.E.2d 52. Should hearsay statements be admitted improperly, however, such error does not necessarily require reversal of the outcome of the trial. See Arizona v. Fulminante
(1991), 499 U.S. 279, 306-09, 111 S.Ct. 1246. Certain errors in the trial court proceedings may properly be characterized as a "trial error," which the United States Supreme Court defines as "error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." Id. at 307-08. It is to these types of error that "harmless error" analysis applies.
 {¶ 25} Crim.R. 52(A) describes harmless error analysis: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." In order to find that an error in a criminal matter was harmless, this court must find that the error was harmless beyond a reasonable doubt. Chapmanv. California (1967), 386 U.S. 18, 24, 87 S.Ct. 824. If the properly admitted evidence in a case provides "overwhelming proof" of the defendant's guilt, the court may overlook an error by the trial court in the improper admission of evidence. Statev. Tate, 9th Dist. No. 21943, 2005-Ohio-2156, at ¶ 22, citingState v. Williams (1983), 6 Ohio St.3d 281, 290,452 N.E.2d 1323. "When determining whether the admission of evidence is harmless * * * this Court must find `there is no reasonable probability that the evidence may have contributed to the defendant's conviction.'" Tate, at ¶ 22, quoting State v.Hardin (Dec. 5, 2001), 9th Dist. No. 3203-M, citing State v.DeMarco (1987), 31 Ohio St.3d 191, 195, 509 N.E.2d 1256.
 {¶ 26} In this case, Defendant timely objected to the admission of this testimony by Canella as to anything CW told her, on the grounds that it was hearsay. The court allowed Canella to testify under Evid.R. 803(4), which reads as follows:
"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * *
"(4) Statements for the purpose of medical diagnosis or treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
Because Canella testified that she had relayed CW's statements to Dr. LeSure, and because CW was in the care of Canella and the Medina County Department of Jobs and Family Services, the trial court found that her statements fell within this exception to the hearsay rule.
 {¶ 27} Several courts have held that social workers who are not involved in the treatment or diagnosis of an abused child do not qualify as medical professionals, and that therefore statements made to those social workers do not qualify as statements made for the purpose of medical diagnosis or treatment. See State v. Chappell (1994), 97 Ohio App.3d 515,646 N.E. 1191; State v. Woods, 8th Dist. No. 82789,2004-Ohio-2700. In the situations in which the courts have found that statements to a social worker qualify as statements made for the purpose of medical diagnosis, the social worker relating the statements was a hospital social worker or was otherwise involved in treating the child for the abuse. See State v. Eagle, 9th Dist. No. 04CA0003, 2004-Ohio-3255, at ¶ 14-16; State v. Major,
9th Dist. No. 21662, 2004-Ohio-1423.
 {¶ 28} In this case, since Canella was not involved in the diagnosis or treatment of CW, nor was she employed in any way by a treating hospital or physician, she should not have been considered a medical professional and CW's statements to her were not admissible under the Evid.R. 803(4) exception. The trial court erred in admitting this testimony under the medical diagnosis and treatment exception.
 {¶ 29} Having established that the testimony was improperly admitted, the next consideration is whether the error was harmless. We find that it was. Two of the statements made by Canella had just been made multiple times by the treating psychologist, Dr. LeSure, immediately before Canella took the stand. Dr. LeSure related CW's statements that her mother was in the bed at the time CW was molested, and that CW had witnessed her mother performing oral sex on Troutman. There were at least three references to each of these two statements during Dr. LeSure's testimony. Testimony that is otherwise inadmissible hearsay, when it is also offered by a witness who is qualified to give the testimony, is considered cumulative and its admission is therefore harmless. See State v. Riley, 9th Dist. No. 21852,2004-Ohio-4880, at ¶ 47.
 {¶ 30} The statement offered by Canella to which Dr. LeSure did not testify, namely that CW begged Defendant not to leave her alone with Troutman, is also harmless error because of the volume of admissible evidence that had mounted against Defendant. As set forth in Tate, the properly admitted evidence in this case provided "overwhelming proof" that Defendant was aware of the danger to her daughter and that she acted recklessly in allowing Troutman to have access to CW. We find that all statements offered by Canella and identified by Defendant as hearsay were harmless beyond a reasonable doubt. Defendant's second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR
"The trial court erred in sentencing Defendant to more than the minimum prison term of one year, where it made additional findings pursuant to the unconstitutional and now-severed provisions of R.C. 2929.14(B) that the shortest prison term would demean the seriousness of [Defendant's] conduct and would not adequately protect the public from future crime by [Defendant] or others."
 {¶ 31} Defendant argues that the trial court erred in making additional findings that allowed it to sentence her to more than the minimum sentence provided by the applicable sentencing statute, which has since been excised by the Supreme Court's decision in State v. Foster (2005), 109 Ohio St.3d 1,2006-Ohio-856.
 {¶ 32} Pursuant to this court's decision in State v.Dudukovich, 9th Dist. No. 05CA008729, 2006-Ohio-1309, we find that Defendant has not preserved this constitutional challenge for appeal. Under that decision, a defendant's failure to raise a constitutional challenge during the sentencing phase in the trial court results in waiver of that challenge in the trial court. A careful review of the record in this case reveals that Defendant at no time attempted to challenge her sentence, and has therefore waived a challenge in this appeal. Defendant's third assignment of error is overruled.
 {¶ 33} Defendant's three assignments of error are overruled. We affirm the decisions of the trial court.
Judgment affirmed
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Whitmore, J. Baird, J. concur.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to § 6(C), Article IV, Constitution.)