DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant Lisa R. Penix has appealed from her convictions and sentences in the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On September 13, 2005, a grand jury indicted Penix for the following crimes: (1) one count of aggravated murder pursuant to R.C.2903.01(B) with a firearm specification pursuant to R.C. 2941.145; (2) one count of kidnapping pursuant to R.C. 2905.01(A)(3); (3) two counts of tampering with evidence pursuant to R.C. 2921.12(A)(1); and (4) one count of abuse of a corpse *Page 2 
pursuant to R.C. 2927.01(B). Penix's charges stemmed from the brutal murder of her cousin Steven Spade. We detailed many of the gruesome facts of Spade's death in the appeal of Penix's codefendant, Shane Rafferty. See State v. Rafferty, 9th Dist. No. 23217, 2007-Ohio-3997. We now summarize the facts as they relate to Penix's role in Spade's untimely death.
 {¶ 3} On February 4, 2005, Penix, Shane Rafferty, Derek Shutt, Jason Keenan, and William Kramer each participated in the murder of Spade. Penix invited Spade to Shutt's house on Voris Street where Penix and her boyfriend Rafferty also resided. At some point after Spade's arrival, the group headed down to the basement to use methamphetamines. Rafferty forced Spade to sit in a chair, bound him to it, and proceeded to beat him while the others watched. Rafferty then dragged Spade to the basement's bathroom and killed him. Afterwards, Rafferty used a hacksaw to decapitate Spade. Rafferty, Penix, Shutt, and Kramer then wrapped Spade's body in plastic and drove it to West Virginia. Upon finding a secluded field, Rafferty and Kramer doused the body in gasoline, Penix set fire to it, and the group returned to Shutt's house.
 {¶ 4} Penix eventually agreed to speak to her cousin, Mogodore Police Officer Eric Berkheimer, about Spade's disappearance. Officer Berkheimer contacted the police in West Virginia and discovered that they had found a body, which proved to be Spade's. Based on its investigation and the discovery of Spade's body, the State brought charges against Rafferty, Shutt, Keenan, and *Page 3 
Kramer. Shutt, Keenan, and Kramer each pled guilty to the charges pending against them and agreed to be witnesses for the State. Upon Penix's indictment, all three men testified against her at her trial, which commenced on February 13, 2006.
 {¶ 5} On February 23, 2006, the jury found Penix guilty on all counts except for the firearm specification. On February 28, 2006, the trial court journalized the jury's finding of guilt. On March 9, 2006, Penix filed a motion for a new trial. Without responding to Penix's motion, the trial court sentenced Penix on March 1, 2006. The court sentenced Penix to life imprisonment for the aggravated murder conviction with a possibility of parole in twenty-three years, three years in prison for the kidnapping conviction, a total of two years for the tampering with evidence convictions, and one year for the abuse of a corpse conviction. The court ordered that Penix's aggravated murder and kidnapping sentences run consecutively, but allowed all of her other sentences to run concurrently. Accordingly, the court sentenced Penix to serve a total of at least twenty-six years in prison.
 {¶ 6} On March 24, 2006, Penix filed a notice of appeal. However, this Court dismissed Penix's appeal for lack of jurisdiction due to her outstanding motion for a new trial. On April 2, 2007, the trial court denied Penix's motion for a new trial. On April 25, 2007, Penix filed her new notice of appeal. Penix's appeal is now properly before this court and raises eleven assignments of error for *Page 4 
our review. We have rearranged and consolidated several of her assignments of error to facilitate our review.
 II. ASSIGNMENT OF ERROR III "THE CONVICTION OF MS. PENIX FOR THE CHARGES OF AGGRAVATED MURDER[,] KIDNAPPING, TAMPERING WITH EVIDENCE[,] AND ABUSE OF A CORPSE IN THIS CASE ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED."
 ASSIGNMENT OF ERROR IV "THE TRIAL COURT ERRED TO THE PREJUDICE OF MS. PENIX AND IN VIOLATION OF CRIMINAL RULE 29(A), ARTICLE I[,] SECTION 10 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES, WHEN IT DENIED MS. PENIX'S MOTION FOR ACQUITTAL."
 ASSIGNMENT OF ERROR V "THE TRIAL COURT INCORRECTLY DENIED MS. PENIX'S MOTION FOR ACQUITTAL IN VIOLATION OF CRIMINAL RULE 29; SPECIFICALLY, THERE WAS NOT SUFFICIENT EVIDENCE TO PROVE THE OFFENSES OF AGGRAVATED MURDER, KIDNAPPING, TAMPERING WITH EVIDENCE AND ABUSE OF A CORPSE BEYOND A REASONABLE DOUBT."
 {¶ 7} In her first assignment of error, Penix argues that her convictions are against the manifest weight of the evidence because the State's witnesses were not credible. In her second and third assignments of error, Penix argues that her convictions were not based on sufficient evidence. We disagree. *Page 5 
 {¶ 8} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus; see, also, Thompkins, 78 Ohio St.3d at 386.
 {¶ 9} In State v. Roberts, this Court explained that "sufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462. Accordingly, we address Penix's manifest weight challenge first, as it is dispositive of her claims of sufficiency. *Page 6 
 {¶ 10} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten, 33 Ohio App.3d at 340.
 {¶ 11} Penix collectively challenges her aggravated murder, kidnapping, tampering with the evidence, and abuse of a corpse convictions because each of the State's witnesses "had a motive to lie" and testified inconsistently on several occasions. She argues that her codefendants (Keenan, Kramer, and Shutt) were not credible because they each received plea agreements in exchange for their testimony. She further argues that her codefendants' trial testimony was inconsistent with their initial statements to the police because they adjusted their *Page 7 
version of the events upon receiving a negotiated plea. Based on our review of the record, we cannot agree that the jury lost its way in convicting Penix.
 {¶ 12} Ryan Brookman, Spade's friend, testified that Spade invited him to a party on February 4, 2005. Spade planned to go to the party with Penix and his other friend William Kramer in order to use drugs. Brookman further testified that he declined Spade's invitation, but that one of the other individuals going to the alleged party picked Spade up at approximately 6:00 p.m.
 {¶ 13} Jason Penix, Spade's cousin, testified that about a week after Spade disappeared he contacted Penix to ask her if she knew where Spade was. Jason said that he had a "regular, normal conversation" with Penix, and that she denied knowing Spade's whereabouts. Penix told Jason that the last time she saw Spade was at a party on February 4, 2005 and that she was angry with Spade for misusing her roommate's car. Penix then asked Jason to tell Spade that she wanted to talk to him about the car the next time Jason saw him.
 {¶ 14} Robert Rafferty, Shane Rafferty's cousin, testified that Rafferty called him over to the house on Voris Street on March 31, 2005 to ask Robert about a remodeling project. Rafferty initially claimed that he needed a new toilet for purposes of remodeling, but then admitted that he had broken the old toilet by slamming Spade's head into it. Rafferty told Robert that he had shot Spade with Shutt's gun. Penix, who was also present at the house, then told Robert that she was present for Spade's death as well and that, "[w]hen we were cleaning up, *Page 8 
every time I walked past [Spade], I kicked him in the f * * * ing head." Penix also indicated that the reason Spade had been killed was "because he was a f * * * ing narc."
 {¶ 15} Jason Keenan, Rafferty and Shutt's roommate at the Voris Street house, testified that Penix was part of the plan to kill Spade. Keenan explained that Rafferty planned to kill Spade on the evening of February 4, 2005, and that he was also willing to kill Kramer, Spade's close friend, if Kramer refused to go along with the plan to kill Spade. According to Keenan, if Kramer refused to comply, then Penix was going to lure Kramer upstairs under the pretenses of having sex with him and kill him afterwards. Keenan explained the details of his plea arrangement with the State during the course of his testimony and admitted that he received a reduction in charges in exchange for his testimony.
 {¶ 16} William Kramer, Spade's friend, testified that Spade invited him to a party on February 4, 2005 and indicated that Rafferty, Penix, and Shutt would be at the party. Kramer agreed to attend the party and drove Spade to the Voris Street house on the night of the party. Kramer testified that after his arrival Penix asked him if he would like to have sex with her. Kramer responded affirmatively, but left the house with Rafferty to purchase more beer first. Before Kramer sought out Penix at the house again, Rafferty told Kramer that he intended to kill Spade and that if Kramer did not cooperate he would kill him as well. Kramer then testified as to Penix's involvement in Spade's murder. Specifically, he stated that Penix: *Page 9 
(1) gathered and provided Rafferty with several trash bags so that the group could wrap up Spade's body after the murder; (2) rode in the car with him and Rafferty to take Spade's body to West Virginia; (3) set fire to Spade's body after Rafferty doused it in gasoline; and (4) cleaned the house on Voris Street with ammonia and bleach after the group's return from West Virginia. He also stated that Penix, Rafferty, and Shutt later laughed when informing him that if he had refused to help murder Spade their plan had been for Penix to lure him with sex and then kill him as well. Much like Keenan, Kramer testified about the details of his plea agreement and admitted that he received a reduction in charges for his testimony.
 {¶ 17} Derek Shutt, Rafferty and Kennan's roommate, testified that Spade came to the house on Voris Street on February 4, 2005 because Penix called him and invited him there. Shutt testified that Penix did not help wrap up Spade's body after Rafferty killed him, but that she was the one to set fire to it in West Virginia. Shutt further testified that the original plan had been for Penix to kill Spade as a showing of loyalty to her boyfriend Rafferty, but that Rafferty killed Spade out of anger first. Shutt stated that Penix also intended on luring Kramer with sex and killing him if he did not agree to help kill Spade. Lastly, Shutt testified about the details of his plea agreement with the State and admitted that he had received a slight reduction in charges.
 {¶ 18} The record itself contradicts Penix's argument that all of the witnesses against her had motive to lie. Ryan Brookman, Jason Penix, and Robert *Page 10 
Rafferty had nothing to gain by testifying against Penix. Moreover, each of Penix's codefendants informed the jury of their involvement in the case and the plea agreements they received as a result of their agreements to testify. During cross examination, defense counsel drew attention to inconsistencies in their statements and questioned their truthfulness. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Since the jury is in the best position to determine the credibility of the witnesses during trial, this Court will not substitute its own factual determinations for the jury's. State v. Crowe, 9th Dist. No. 04CA0098-M,2005-Ohio-4082, at ¶ 22. We will not overturn the verdict on a manifest weight challenge solely because the jury chose to believe the State's witnesses. Id. Our review of the record convinces us that the jury did not lose its way in convicting Penix on all of the charges against her. Consequently, Penix's manifest weight of the evidence challenge lacks merit.
 {¶ 19} Having disposed of Penix's challenge to the weight of the evidence, we similarly dispose of her sufficiency challenges.Roberts, supra, at *2. Penix's third, fourth, and fifth assignments of error are overruled.
 ASSIGNMENT OF ERROR VII "THE TRIAL COURT ERRED IN ADMITTING HEARSAY TESTIMONY REGARDING [MS. PENIX'S] ALLEGED ACTIONS PRIOR TO THE CRIME." *Page 11 
 {¶ 20} In her seventh assignment of error, Penix argues that the trial court erred in admitting certain hearsay statements. Specifically, Penix argues that Ryan Brookman and Gene Spade, Steven Spade's father, should not have been allowed to testify that Spade told them that he was attending a party the night of February 4, 2005, that Penix had invited him, and that he had invited Brookman to join him.
 {¶ 21} Even if we assume that it was error for the trial court to admit the aforementioned testimony, we fail to see how such an error prejudiced Penix. A trial court's decision to admit evidence is reviewed for an abuse of discretion. State v. Ahmed, 103 Ohio St.3d 27,2004-Ohio-4190, at ¶ 79. However, an error in the admission of evidence does not automatically require a reversal of a conviction. State v.Walker, 9th Dist. No. 06CA0006-M, 2006-Ohio-5479, at ¶ 24, citingArizona v. Fulminante (1991), 499 U.S. 279, 306-09. Pursuant to Crim.R. 52(A), "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Consequently, we may disregard any error that we find to be harmless beyond a reasonable doubt. Chapman v. California (1967), 386 U.S. 18, 24. In analyzing whether an error was harmless, we must be able to conclude that there is "no reasonable possibility that the evidence may have contributed to the accused's conviction[.]" State v. DeMarco (1987), 31 Ohio St.3d 191,195.
 {¶ 22} As we set forth in our analysis of Penix's third, fourth, and fifth assignments of error above, the record is replete with evidence of her guilt. *Page 12 
Numerous witnesses testified about her involvement in Spade's death. Moreover, other witnesses besides Brookman and Gene Spade testified that Spade was attending a party on the night of February 4, 2005 and that Penix had invited him. Jason Penix testified that Penix told him she had last seen Spade at a party on February 4, 2005. Officer Berkheimer testified that he filed a missing persons report regarding Spade's disappearance after Gene Spade sought help finding his son. Officer Berkheimer indicated that the information he received was that, "the last day [Spade] was heard and seen was going to Cleveland with his [Penix]." When asked how everybody came to arrive at the house on Voris Street on the night of February 4th, Shutt testified, "Lisa had called [Spade] about going up to * * * a meth party or crank party or whatever." Penix failed to object to any of this testimony at trial and does not address it on appeal. She makes no attempt to explain why Brookman's and Gene Spade's testimony prejudiced her while the admission of this other unchallenged testimony did not. Based on all of the evidence supporting her guilt and the unchallenged, duplicative evidence from witnesses other than Brookman and Gene Spade, we conclude that the jury would have reached the same result even without the testimony to which Penix assigns error. See id. Even if the trial court erred in admitting their testimony, the error was harmless. Penix's seventh assignment of error is without merit. *Page 13 
 ASSIGNMENT OF ERROR VIII "THE STATE OF OHIO COMMITTED PROSECUTORIAL MISCONDUCT BY COMMENTING ON MS. PENIX'S FAILURE TO TESTIFY DURING THE TRIAL IN VIOLATION OF HER CONSTITUTIONAL RIGHTS."
 {¶ 23} In her eighth assignment of error, Penix argues that the prosecutor engaged in misconduct during closing argument by commenting on Penix's failure to testify. We disagree.
 {¶ 24} The Supreme Court of Ohio has limited the instances when a judgment may be reversed on grounds of prosecutorial misconduct. SeeState v. Lott (1990), 51 Ohio St.3d 160, 166. The analysis of cases alleging prosecutorial misconduct focuses on the fairness of the trial and not the culpability of the prosecutor. Id. A reviewing court is to consider the trial record as a whole and is to ignore harmless errors "including most constitutional violations." Id., quoting United Statesv. Hasting (1983), 461 U.S. 499, 508-09. Accordingly, a judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial. State v. Carter (1995),72 Ohio St.3d 545, 557.
 {¶ 25} "In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a reviewing court must determine if the remarks were improper, and, if so, whether they actually prejudiced the substantial rights of the defendant." State v. Overholt, 9th Dist. No. 02CA0108-M, 2003-Ohio-3500, at ¶ 47, citing State v. Smith (1984),14 Ohio St.3d 13, 14. "Isolated comments by a *Page 14 
prosecutor are not to be taken out of context and given their most damaging meaning." State v. Hill (1996), 75 Ohio St.3d 195, 204, citingDonnelly v. DeChristoforo (1974), 416 U.S. 637, 647. Furthermore, the appellant must show that there is a reasonable probability that but for the prosecutor's misconduct the result of the proceeding would have been different. State v. Loza (1994), 71 Ohio St.3d 61, 78, overruled on other grounds.
 {¶ 26} Penix takes issue with the following comments that the prosecutor made during closing argument:
 "You don't know what her motivation was. You have no idea what that was, and you cannot speculate to what that was because you haven't heard any evidence of it. You haven't heard it from anyone, what her motivation was to come forward."
Penix claims that these comments relate directly to her choice not to testify and prejudiced her right to a fair trial. Yet, Penix fails to consider the context of the prosecutor's statements. See Hill, supra. The record reflects that the prosecutor made these statements in response to defense counsel's overarching theme during closing argument that Penix altruistically approached police of her own accord with helpful evidence and that unlike her codefendants she was not "looking to cut some deal" or "get some kind of mitigation." The prosecutor further clarified in argument that:
 "You don't know that it wasn't all pretext, I'm going to be the victim. You don't know that. You don't know that she wanted to get to the police first. You have no idea. All you know is that she gave information that led to finding the body seven months after the homicide." *Page 15 
In considering the entirety and context of the prosecutor's remarks, it seems clear that the prosecutor meant to address Penix's motivation in initially coming forward to the police rather than her decision to not testify at trial. Moreover, these remarks were induced by defense counsel's suggestion that Penix's motives were entirely altruistic. Based on all the evidence at trial and the innocuity of the prosecutor's remarks, we cannot say that the prosecutor's conduct deprived Penix of a fair trial. See Carter, 72 Ohio St.3d at 557. Penix's eighth assignment of error lacks merit.
 ASSIGNMENT OF ERROR IX "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ITS INSTRUCTIONS TO THE JURY IN THIS MATTER."
 {¶ 27} In her ninth assignment of error, Penix argues that the trial court prejudiced her by improperly instructing the jury. Specifically, she argues that the trial court erred in instructing the jury that the causation element of aggravated murder would be satisfied if the jury found a failure to act that resulted in physical harm.
 {¶ 28} A trial court must charge a jury with instructions that are a correct and complete statement of the law. Marshall v. Gibson (1985),19 Ohio St.3d 10, 12. However, the precise language of a jury instruction is within the discretion of the trial court. Youssef v. Parr, Inc.
(1990), 69 Ohio App.3d 679, 690. In reviewing jury instructions on appeal, this Court has previously stated: *Page 16 
 "[A]n appellate court reviews the instructions as a whole. If, taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled. Moreover, misstatements and ambiguity in a portion of the instructions will not constitute reversible error unless the instructions are so misleading that they prejudicially affect a substantial right of the complaining party." (Citations omitted.) Wozniak v. Wozniak (1993), 90 Ohio App.3d 400, 410; see, also, Kokitka v. Ford Motor Co. (1995), 73 Ohio St.3d 89, 93.
Thus, reversible error usually cannot be predicated upon "one paragraph, one sentence, or one phrase" contained in the general charge. State v.Sipos (Aug. 5, 1987), 9th Dist. Nos. 2238, 2239, quoting State v.Porter (1968), 14 Ohio St.2d 10, 13. We must consider the jury charge in its entirety to determine whether an instruction resulted in prejudice.Porter, 14 Ohio St.2d at 13.
 {¶ 29} The trial court instructed the jury on causation as follows:
 "Cause is an essential element of the offense. Cause is an act or failure to act which in a natural and continuous sequence directly produces the death or physical harm of another and without which it would not have occurred."
Penix argues that the trial court erred in failing to eliminate the "or failure to act" and "or physical harm" language from the jury instruction. She claims that the inclusion of that language prejudiced her because the jury could have believed that it was proper to convict her for aggravated murder based on her failure to stop Rafferty and her other codefendants from beating and killing Spade. In instructing the jury on complicity, however, the trial court also explained that:
 "Aiding and abetting means conspired, supported, assisted, encouraged, cooperated with, advised or incited. * * * The mere *Page 17 
presence of the accused during the commission of a crime does not make her an accomplice. The mere association with one who perpetuates an unlawful act does not render a person a participant in the crime so long as her acts are innocent."
This additional language makes it clear that Penix's mere presence would be insufficient to convict her of aggravated murder. While we do not sanction the inclusion of the language with which Penix takes issue, we also will not reverse a conviction on the basis of such an error if it was harmless beyond a reasonable doubt. See State v. Sipos (Aug. 5, 1987), 9th Dist. Nos. 2238, 2239, at *3 (finding that the inclusion of the "failure to act" language in a complicity instruction was harmless error); Crim.R. 52(A). Considering the entirety of the trial court's jury charge, we conclude that Penix was not prejudiced by the court's instructions. See Wozniak, supra. Penix's ninth assignment of error is overruled.
 ASSIGNMENT OF ERROR X "THE FAILURE TO SEPARATE THE CO-DEFENDANTS PREJUDICED MS. PENIX'S RIGHT TO A FAIR TRIAL[.]"
 {¶ 30} In her tenth assignment of error, Penix argues that she is entitled to a new trial because her codefendants were housed and transported together despite a court order that they be housed and transported separately. Penix argues that her codefendants' testimony proves that they were housed and transported together and that as a result they had time to conspire against her.
 {¶ 31} An appellant bears the burden of demonstrating error on appeal. See App.R. 16(A)(7); Loc.R. 7(B)(7). "It is the duty of the appellant, not this court, to *Page 18 
demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." State v.Taylor (Feb. 9, 1999), 9th Dist. No. 2783-M. See, also, App.R. 16(A)(7); Loc.R. 7(B)(7). As proof that her codefendants were transported and housed together in violation of a court order, Penix cites to various statements that her codefendants made during their testimony. Penix fails to supply this Court with a copy of any order that the trial court issued, which directed her codefendants to be separated. Nor does she cite to any law in support of her proposition. As such, Penix has not affirmatively demonstrated error on appeal. See Taylor, supra; see, also, App.R. 9(B) (charging appellant with the duty to ensure that the reviewing court has the record necessary to determine the appeal). Penix's tenth assignment of error lacks merit.
 ASSIGNMENT OF ERROR XI "THE TRIAL COURT IMPROPERLY DENIED MS. PENIX'S MOTION FOR A NEW TRIAL.
 {¶ 32} In her eleventh assignment of error, Penix argues that the trial court erred in failing to grant her motions for a new trial. She argues that the following errors entitled her to a new trial: (1) the trial court permitted the jurors to take the jury instructions home; (2) the trial court improperly instructed the jury by including the "or failure to act" and "or physical harm" language in its causation instruction; (3) the prosecutor improperly commented on Penix's failure to testify during closing argument; and (4) the trial court improperly admitted hearsay *Page 19 
evidence that Spade attended a party on the night of February 4, 2005 and that Penix invited him to the party.
 {¶ 33} Penix initially filed a motion for a new trial on March 9, 2006, alleging each of the aforementioned errors except for the error regarding jurors taking the jury instructions home. Subsequently, Penix filed another motion for new trial on May 10, 2006, arguing that she had newly discovered evidence of juror misconduct. We consider each of Penix's motions separately.
 {¶ 34} Crim.R. 33(A) permits a defendant to move for a new trial on the basis of errors that have materially affected her substantial rights. A trial court's ruling on a motion for a new trial under Crim.R. 33 will be reversed only for an abuse of discretion. State v. Herb, 9th Dist. No. 05CA008783, 2006-Ohio-2412, at ¶ 6. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621.
 {¶ 35} Penix raised issue with the trial court's instruction to the jury, the prosecutor's alleged misconduct during closing argument, and the alleged improper admission of hearsay evidence in her previous assignments of error. In each assignment of error, we determined that no error occurred or that any error that did occur was harmless. Accordingly, we find that the trial court did not *Page 20 
abuse its discretion in denying Penix's motion for a new trial on the basis of the trial court's instruction on causation, the prosecutor's comments during closing argument, and the admission of statements that Spade was to attend a party on February 4, 2005 to which Penix invited him.
 {¶ 36} Pursuant to Crim.R. 33(A)(6), a new trial also may be granted "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." To support a motion based on newly discovered evidence, "the defendant must produce * * * the affidavits of the witnesses by whom such evidence is expected to be given[.]" State v.Holmes, 9th Dist. No. 05CA008711, 2006-Ohio-1310, at ¶ 13, quoting Crim.R. 33(A)(6). Furthermore, the Ohio Supreme Court has held that:
 "To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." State v. Petro (1947), 148 Ohio St. 505, syllabus.
"To warrant the granting of a new trial, the new evidence must, at the very least, disclose a strong probability that it will change the result if a new trial is granted." Holmes at ¶ 15, quoting State v.Starling, 10th Dist. No. 01AP-1344, 2002-Ohio-3683, at ¶ 13. *Page 21 
 {¶ 37} Penix claims that she was prejudiced because after trial she learned that the trial court had permitted the jurors to take their jury instructions home with them and consequently the jurors had the ability to deliberate independently rather than collaboratively. In support of Penix's argument, defense counsel filed an affidavit indicating that he learned of this newly discovered evidence solely "through juror conversations." The record is devoid of any evidence suggesting that the trial court permitted the jurors to take their instructions home or to deliberate outside of the jury room. Thus, Penix relies on the statements of the jurors to support her argument for a new trial.
 {¶ 38} Juror testimony is generally not admissible to impeach a jury verdict unless there is supporting evidence aliunde. Evid.R. 606(B);State v. Hessler (2000), 90 Ohio St.3d 108, 123. Evidence aliunde is extraneous, independent evidence of alleged conduct based on the firsthand knowledge of one who is not a juror. State v. Schiebel (1990),55 Ohio St.3d 71, 75. Specifically, Evid.R. 606(B) provides as follows:
 "Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith."
On appeal, Penix fails to allege that any evidence aliunde exists that would impeach the jury's verdict. Consequently, the trial court did not abuse its *Page 22 
discretion in denying Penix's motions for a new trial. Penix's eleventh assignment of error is without merit.
 ASSIGNMENT OF ERROR VI "MS. PENIX WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."
 {¶ 39} In her sixth assignment of error, Penix argues that she did not receive effective assistance of counsel at trial. Specifically, she argues that her defense counsel: (1) failed to support her theory of duress with expert psychological or medical testimony; (2) erred in advising her not to testify; and (3) inadequately argued her lack of motive to the jury. We disagree.
 {¶ 40} In evaluating an ineffective assistance claim, this Court employs the two step process described in Strickland v. Washington
(1984), 466 U.S. 668, 687.
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.
When applying this test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689. Trial strategy "must be accorded deference and cannot be examined through *Page 23 
the distorting effect of hindsight." State v. Conway,109 Ohio St.3d 412, 2006-Ohio-2815, at ¶ 115, citing Strickland, 466 U.S. at 689.
 {¶ 41} Penix first argues that her counsel was ineffective for failing to present expert testimony on her duress defense. Initially, we note that duress is not a defense to aggravated murder. State v.Shepherd (Feb. 17, 1993), 9th Dist. No. 15777. Even as to the other charges against Penix, however, we have held that the decision of whether or not to seek appointment of an expert is a trial strategy as a matter of law. State v. Fisk, 9th Dist. No. 21196, 2003-Ohio-3149, at ¶ 9, citing State v. Coleman (1989), 45 Ohio St.3d 298, 307-08. Numerous witnesses testified about Penix's role in Spade's murder. Given the extensive amount of trial testimony about her actions, we cannot say that her counsel's conduct in not calling an expert fell below the range of reasonable professional assistance. See Strickland, 466 U.S. at 689.
 {¶ 42} Penix next faults her trial counsel for advising her not to testify. "The advice provided by a criminal defense lawyer to his or her client regarding the decision to testify is a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance." (Internal quotations omitted.) State v. Nesbit, 9th Dist. No. 05CA0021, 2006-Ohio-921, at ¶ 9, quoting State v. Essinger, 3d Dist. No. 5-03-15, 2003-Ohio-6000, at ¶ 41. Moreover, Penix has not explained how her testimony would have trumped the plethora of testimony from *Page 24 
the other witnesses at trial. We find no merit in her assertion that her choice not to testify deprived her of a fair trial.
 {¶ 43} Lastly, Penix asserts that her trial counsel was ineffective for not vehemently pointing out her lack of motive to the jury. She argues that her counsel could have drawn more attention to the fact that she was "dressed up" on the night of the party, indicating that she had no prior knowledge that Spade would be murdered. The record reflects that Penix's counsel did ask several witnesses about her attire on the night of the party and her demeanor before and after Spade's death. Moreover, Penix fails to demonstrate how additional evidence of her motive would have dissuaded the jury from considering other pieces of evidence such as her own statements that Spade was killed "because he was a f * * *ing narc" and that after he was killed she "kicked him in the f * * * ing head" every time she walked past his body. Based on the record before us, we cannot conclude that Penix suffered prejudice as a result of counsel's performance. Penix's sixth assignment of error is without merit.
 ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED IN SENTENCING MS. PENIX TO CONSECUTIVE TERMS OF INCARCERATION AND IMPROPERLY FOLLOWED THE PROCEDURE IN IMPOSING THE SENTENCE PURSUANT TO THE FELONY SENTENCING GUIDELINES SET FORTH IN R.C. CHAPTER 2929."
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED IN SENTENCING MS. PENIX TO MORE THAN THE MINIMUM SENTENCE FOR THE CRIME *Page 25 
OF AGGRAVATED MURDER BY IMPROPERLY FOLLOWING THE PROCEDURES FOR SUCH A SENTENCE AS STATED IN O.R.C. 2929.14 THROUGH 2929.19."
 {¶ 44} In her first and second assignments of error, Penix argues that the trial court erred in imposing consecutive sentences on her and in sentencing her to more than the minimum term of incarceration for aggravated murder. Specifically, Penix argues that the trial court failed to give its reasoning for sentencing her to consecutive terms pursuant to R.C. 2929.14 and that her conduct and lack of a prior record entitled her to the minimum sentence. We disagree.
 {¶ 45} Trial courts are vested with full discretion in imposing sentence for felony offenses within the statutory ranges set forth in R.C. 2929.14. State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, at ¶ 100. Accordingly, appellate courts review felony sentencing for an abuse of discretion. State v. Windham, 9th Dist. No. 05CA0033,2006-Ohio-1544, at ¶ 12. An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore, 5 Ohio St.3d at 219. In so doing, we do not substitute our judgment for that of the trial court. Pons, 66 Ohio St.3d at 621.
 {¶ 46} The record reflects that the trial court did explain its reasoning for sentencing Penix during the sentencing hearing. Moreover, the trial court's journal entry reads as follows: *Page 26 
 "The Court further finds, pursuant to O.R.C. 2929.14(E)(3), that consecutive sentences are necessary to protect the public and punish the offender, not disproportionate to the conduct and to the danger the offender poses, and the harm was so great or unusual that a single term does not adequately reflect the seriousness of the conduct."
Given the trial court's reasoning and the depravity of Penix's crimes, we find that the trial court did not abuse its discretion in imposing consecutive sentences or in sentencing her to more than the minimum sentence for aggravated murder. Penix's first and second assignments of error are overruled.
 III. {¶ 47} Penix's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). *Page 27 
The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
BAIRD, J. CONCURS